**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL KENT, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| OYSTER POINT PHARMA, INC., | ) | **FEDERAL SECURITIES LAWS** |
| DONALD J. SANTEL, JEFFREY NAU, | ) | |
| MICHAEL G. ATIEH, ALI BEHBAHANI, | ) | JURY TRIAL DEMANDED |
| MARK MURRAY, CLARE OZAWA, | ) | |
| BENJAMIN TSAI, AIMEE WEISNER, and | ) | |
| GEORGE ELIADES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Michael Kent ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Applied Genetic Technologies Corporation ("Oyster Point" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by portfolio company of Viatris Inc. ("Viatris").[1]

2. On November 7, 2022, the Company entered into an Agreement and Plan of

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

Merger (the "Merger Agreement") Viatris and Iris Purchaser Inc. ("Purchaser"). The Merger Agreement provides that Viatris will acquire Oyster Point in exchange for $11.00 in cash and one contingent value right which represents the contractual right to receive contingent payments of $1.00 or $2.00 in cash if specified milestones are achieved, per share of Oyster Point common stock, via a tender offer (the "Tender Offer").[2]

3. The Company's corporate directors subsequently authorized the December 1, 2022, filing of the materially incomplete and misleading 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the SEC. The Solicitation Statement, which recommends that Company stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Solicitation Statement in violation of the Exchange Act.

4. It is imperative that the material information omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the forthcoming Tender Offer deadline, so that they can properly exercise their rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on December 1, 2022

[3] The Tender Offer is currently scheduled to expire at one minute following 11:59 p.m., Eastern Time, on December 30, 2022.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.  Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.  Plaintiff is, and has been at all times relevant hereto, the owner of OYSTER POINT common stock.

10. Defendant Oyster Point is a Delaware corporation with its principal executive offices located at 202 Carnegie Center, Suite 106, Princeton, New Jersey 08540. Oyster Point's shares trade on the Nasdaq Global Select Market under the ticker symbol "OYST." Oyster Point is a commercial-stage biopharmaceutical company focused on the discovery, development, and commercialization of pharmaceutical therapies to treat ophthalmic diseases in the United States. Oyster Point's commercial product is TYRVAYA, formerly referred to as OC-01 (varenicline solution) nasal spray, a nicotinic acetylcholine receptor agonist for the treatment of signs and symptoms of dry eye disease, which was approved by the U.S. Food and Drug Administration in 2021 for the treatment of the signs and symptoms of dry eye disease.

The Company is exploring other potential applications for OC-01 (varenicline solution) nasal spray, including neurotrophic keratopathy, dry eye associated with contact lens intolerance, and ocular surface preparation for refractive surgeries.

11. Defendant Donald J. Santel is and has been Chairperson of the Board and a director of the Company at all times relevant hereto.

12. Defendant Jeffrey Nau is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

13. Defendant Michael G. Atieh is and has been a director of the Company at all times relevant hereto.

14. Defendant Ali Behbahani is and has been a director of the Company at all times relevant hereto.

15. Defendant Mark Murray is and has been a director of the Company at all times relevant hereto.

16. Defendant Clare Ozawa is and has been a director of the Company at all times relevant hereto.

17. Defendant Benjamin Tsai is and has been a director of the Company at all times relevant hereto.

18. Defendant Aimee Weisner is and has been a director of the Company at all times relevant hereto.

19. Defendant George Eliades is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.  On November 7, 2022, Oyster Point announced in relevant part:

PRINCETON, N.J., Nov. 07, 2022 (GLOBE NEWSWIRE) -- Oyster Point Pharma, Inc. (Nasdaq: OYST), ("Oyster Point Pharma"), today announced that it has entered into a definitive agreement under which Viatris Inc. (Nasdaq: VTRS), a global healthcare company, would acquire Oyster Point Pharma, a commercial-stage biopharmaceutical company focused on the discovery, development and commercialization of first-in-class pharmaceutical therapies to treat ophthalmic diseases. Viatris intends to acquire Oyster Point Pharma as the foundation of its new ophthalmology franchise, recognizing its uniquely talented team, the strength of TYRVAYA® (varenicline solution) Nasal Spray and Oyster Point Pharma's pipeline.

Under the terms of the agreement, Viatris will commence a tender offer to purchase all outstanding shares of Oyster Point Pharma for $11.00 per share in cash at closing, plus a contingent value right ("CVR") for a potential cash payment of up to $2.00 per share upon achievement of specified performance targets by Oyster Point Pharma for full year 2022.

The transaction was unanimously approved by the Oyster Point Pharma Board of Directors.

"Oyster Point Pharma brings to Viatris the strength of TYRVAYA Nasal Spray, the first and only FDA-approved nasal spray for dry eye in the U.S., an eye care focused pipeline, and a very experienced team that possesses extensive knowledge of the ophthalmology space from a clinical, medical, regulatory and commercial perspective," said Michael Goettler, chief executive officer of Viatris.  "Together, we believe we are setting the foundation for the next global ophthalmology leader, accelerating efforts to address the unmet needs of patients with ophthalmic disease and the eye care professionals who treat them, and positioning Viatris for growth."

"We are pleased to announce Viatris' proposed acquisition of Oyster Point Pharma, recognizing the exciting opportunities that lie ahead of us," said Jeffrey Nau, Ph.D., MMS, president and chief executive officer of Oyster Point Pharma. "Through our efforts to license our innovations globally, we recognized that Viatris would be an optimal partner with its Global Healthcare Gateway.  With Viatris' global capabilities and commitment to ophthalmology, we expect to be able to expand TYRVAYA's impact on the dry eye landscape and accelerate our exciting pipeline.  With our combined sector expertise, innovation, scale, pipeline and global commercial reach, we expect to build a world-class

ophthalmology business to meaningfully shape the future of eye care, to the benefit of patients."

In November 2021, Oyster Point Pharma launched TYRVAYA, the first and only FDA-approved nasal spray for the treatment of the signs and symptoms of dry eye disease. In addition, Oyster Point Pharma has a growing pipeline of clinical and pre-clinical programs aimed at delivering transformative innovation for ocular surface diseases. In addition to TYRVAYA, Oyster Point Pharma has three drug candidates in its pipeline: two investigational therapies for neurotrophic keratopathy, a severe degenerative condition affecting the nerves of the cornea, and another for vernal/atopic keratoconjunctivitis, a severe allergic condition of the eyes.

**Transaction Terms and Financing**

Under the terms of the agreement, Viatris will initiate a tender offer to acquire all of the outstanding shares of Oyster Point Pharma's common stock at a price of $11.00 per share in cash at closing, plus a contingent value right ("CVR") representing the right to receive a potential cash payment of up to $2.00 per share. The amount (if any) payable under the CVR will be based on the following performance targets to be achieved by Oyster Point Pharma for full year 2022:

- An additional $1.00 per share in cash if Oyster Point Pharma generates equal to or greater than $21.6 million of net product revenue and 131,822 total prescriptions of TYRVAYA; or
- An additional $2.00 per share in cash if Oyster Point Pharma generates equal to or greater than $24.0 million of net product revenue and 146,469 total prescriptions of TYRVAYA.

The transaction is subject to customary closing conditions, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and the tender of a majority of the outstanding shares of Oyster Point Pharma's common stock. Oyster Point Pharma stockholders holding approximately 46% of Oyster Point Pharma's common stock have entered into a tender and support agreement with Viatris, pursuant to which such stockholders have agreed, among other things, to tender 100% of their shares of Oyster Point Pharma's common stock in the tender offer, subject to the terms and conditions of such agreement.

Following the successful closing of the tender offer, Viatris will acquire all remaining shares of Oyster Point Pharma's common stock that are not tendered into the tender offer through a second-step merger at the same price of $11.00 per share, plus a CVR representing the right to receive up to $2.00 per share.

The transaction is anticipated to close during the first quarter of 2023.

**The Materially Incomplete and Misleading Solicitation Statement**

22. The Board caused to be filed the materially incomplete and misleading Solicitation Statement with the SEC on December 1, 2022. The Solicitation Statement, which recommends that Oyster Point stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections; (b) the financial analyses underlying the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (c) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

23. The Solicitation Statement fails to disclose material information concerning the financial projections for the Company, including the line items underlying the Company's forecasts for Unlevered Free Cash Flow.

24. The Solicitation Statement also fails to disclose the assumptions underlying the Company's financial forecasts, including with respect to:

> (i) commercial success of TYRVAYA Nasal Spray, the probability and timing of regulatory approval and commercial launch success for Oyster Point's other product candidates, market size, market share, competition, pricing and reimbursement for each of Oyster Point's products and product candidates; (ii) research and development expenses, sales, general and administrative expenses and other operating expenses.

*See* Solicitation Statement at 37.

*Material Misrepresentations and/or Omissions Concerning Centerview's Financial Analysis*

25. The Solicitation Statement fails to disclose material information concerning MTS Securities' financial analysis.

26. With respect to the *Discounted Cash Flow Analysis* performed by Centerview, the Solicitation Statement fails to disclose: (a) the terminal values for the Company; (b) the tax savings from usage of Oyster Point's federal net operating losses of $203 million as of December 31, 2021 as well as the benefit from estimated 2022 and 2023 federal net operating losses; (c) the Company's fully-diluted outstanding shares; and (d) the expected dilution associated with the assumed equity raises of $50 million and $60 million in 2022 and 2023.

27. With respect to the *Selected Public Company* and *Selected Precedent Transactions Analyses* performed by Centerview, the Solicitation Statement fails to disclose the individual financial metrics for the respective companies and transactions analyzed by the financial advisor.

28. With respect to the *Analyst Price Target Analysis* performed by Centerview, the Solicitation Statement fails to disclose the individual price targets observed and the sources thereof.

29. With respect to the *Precedent Premiums Paid Analysis* performed by Centerview, the Solicitation Statement fails to disclose the individual premiums observed for each transaction analyzed.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

30. The Solicitation Statement fails to disclose material information concerning the background of the Proposed Transaction, including the terms of the confidentiality and non-

disclosure agreement with Party A. *See* Solicitation Statement at 20. Specifically, the Solicitation Statement fails to disclose whether that agreement includes a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding Party A from submitting a topping bid for the Company.

31. The omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Oyster Point's Financial Advisor," and "Background of the Offer and Merger" sections of the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act.

32. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of OYSTER POINT will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

33. Plaintiff repeats all previous allegations as if set forth in full.

34. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting OYSTER POINT stockholders to tender their shares in the Tender Offer.

35. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

36. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in

accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

37. SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

38. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

39. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Solicitation Statement false and/or misleading.

40. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and the other stockholders of OYSTER POINT, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

42. Plaintiff repeats all previous allegations as if set forth in full.

43. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

44. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement to OYSTER POINT stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the Solicitation Statement misrepresented and/or omitted material facts concerning MTS Securities' financial analyses, the background of the Proposed Transaction, and MTS Securities' and Company insiders' potential conflicts of interest.

45. Defendants knew that Plaintiff would rely upon their statements in the Solicitation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

11

46. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff repeats all previous allegations as if set forth in full.

48. The Individual Defendants acted as controlling persons of OYSTER POINT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of OYSTER POINT, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities

violations as alleged herein, and exercised the same. The Solicitation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Solicitation Statement.

51. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered – descriptions into which the Company directors had input.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, OYSTER POINT stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed

Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  December 8 8, 2022   **LONG LAW, LLC**

           By: */s/ Brian D. Long*
             Brian D. Long (#4347)
             3828 Kennett Pike, Suite 208
             Wilmington, DE 19807
             Telephone: (302) 729-9100
             Email: BDLong@LongLawDE.com

             *Attorneys for Plaintiff*